1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATTHEW LEE JASPAR.,

      Plaintiff,                    No. CIV S-06-1797 MCE EFB P

   vs.

MOORS,                                    FINDINGS AND RECOMMENDATIONS

      Defendant.

_____/

      Plaintiff, a prisoner proceeding *in propria persona*, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the First Amendment. He also alleges violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA" or the "Act"), codified at 42 U.S.C. §§ 2000cc, *et seq.*

      The complaint names seven defendants: (1) Chaplain Moors, the protestant chaplain at California Medical Facility; (2) Sergeant J. Winters; (3) Associate Warden Lance Jansen; (4) Lieutenant C.L. Twyman; (5) Warden Martin Veal; (6) J. Pearson, "facility captain and appeal examiner;" and, (7) Nola Grannis, "chief appeal examiner." Complaint ("Compl."), at 4:14-5:8. Only defendant Moors has responded to the complaint. Defendant Moors moves to dismiss plaintiff's RLUIPA claim for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). Plaintiff has filed an opposition to the motion, to which Moors

1

replied. Having considered all submitted papers, the court issues the following findings and recommendations. In accordance with the foregoing, it is recommended that defendant Moors' motion to dismiss be denied.

## I. BACKGROUND

Plaintiff, an inmate at the California Medical Facility ("CMF"), alleges that defendant Moors "intentionally impeded and substantially burdened" his religious rights on several occasions. Compl., at 4:1-3. More specifically, plaintiff alleges that starting in November 2003, defendant Moors prevented him from participating in or receiving various religious services. First, in November 2003, plaintiff alleges that while attending a religious musical event in the protestant chapel, congregants were instructed to hold hands and recite a verse from the book of Psalms. Plaintiff alleges that defendant Moors ordered plaintiff to leave the chapel because the person whose hand plaintiff was holding was a transgender male. Plaintiff alleges that defendant Moors told plaintiff he was "a disgrace to the entire Jewish community," which plaintiff claims "made it clear that [plaintiff] was being singled out because of his religious beliefs." Compl., at 5:12:28. According to plaintiff, defendant Moors went to the alter and publicly [and wrongly] accused plaintiff of being a homosexual, and stated that homosexuals were not welcome in the chapel. Compl., at 6:1-6.

Plaintiff alleges that after filing an inmate grievance related to this conduct, he was persuaded by defendant Crawford, associate warden, to withdraw it based on Crawford's assurances that defendant Moors would cease such conduct. Compl., at 6:7-11. Plaintiff alleges that despite his withdrawal of the grievance, defendant Moors began engaging in retaliatory conduct, further limiting his access to religious services. Specifically, plaintiff alleges that on December 9, 2005, plaintiff went to the chapel in search of the Jewish chaplain. When plaintiff began playing the piano with a chapel clerk, plaintiff alleges that defendant Moors came out of his office and told plaintiff to leave, saying "I don't want that stinking Jew in here, and if I see any of the rest of you with him, I'll ban you as well!" Compl., at 6:13-24. Plaintiff further

alleges that on December 20, 2005, while waiting in the "authorized area outside the Jewish chapel," defendant Moors yelled at plaintiff and made him leave. Compl., at 7:1-13.

On December 27, 2005, plaintiff alleges that while waiting outside the Jewish chapel, defendant Moors again approached him and told him to leave. Plaintiff alleges that despite having a pass to be there and explaining that he was waiting to see the rabbi for spiritual counseling, defendant Moors made him leave, threatening to report plaintiff for a rules violation if he did not. Compl., at 7:14-23.

Plaintiff filed an inmate grievance concerning these incidents, and alleges that on January 30, 2006, defendant Sergeant Winters informed plaintiff that no action would be taken against Moors. Compl., at 7:25-8:5. Plaintiff alleges that defendant Winters and the prison officials who subsequently reviewed plaintiff's grievance – defendants Lance Jensen, Lieutenant Twyman, Warden Martin Veal, Captain J. Pearson, and Nola Grannis – endorsed Moors' actions, presumably by denying plaintiff's request for relief. Compl., at 8:2-9:9. He alleges that these defendants "ratified [Moors'] decision to impose adverse action on plaintiff for exercising protected conduct, placing a substantial burden on his religious practices." Compl., at 4:16-5:8.

Plaintiff alleges that defendants' conduct placed a substantial burden on his free exercise of religion, denying him access to his rabbi and his place of worship. Compl., at 9:19-22. He further alleges that their conduct has "resulted in the exclusion of his central tenet of spiritual fellowship . . . and placed a substantial burden on his right to assembly." *Id.*

Defendant Moors moves to dismiss plaintiff's RLUIPA claim, arguing that the strict scrutiny framework mandated under RLUIPA is inapplicable to claims seeking redress for individual retaliatory conduct of a single prison chaplain.[1] *See* Defendant's Motion to Dismiss and Supporting Memorandum of Points and Authorities ("Defendant's Brief"), at 3:9-18.
////

---

[1] The other defendants have not joined in the motion.

Defendant Moors does not move to dismiss plaintiff's § 1983 claim alleging violations of his constitutional rights under the First Amendment.

**II. ANALYSIS**

    A.  Rule 12(b)(6) Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (May 21, 2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). "While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* (citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint. *Hosp. Bldg. Co. v. Rex. Hosp. Trs.*, 425 U.S. 738, 740 (1976); *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiffs' favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In a case where plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th

4

Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### B. RLUIPA

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), codified at 42 U.S.C. §§ 2000cc, *et seq.*, provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

"The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (quoting *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 877 (1990)). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter*, 544 U.S. at 721.

Under RLUIPA, the plaintiff bears the initial burden of establishing "the prima facie existence of such a substantial burden" on his religious exercise. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). The plaintiff bears the burden of persuasion on that element, and the defendant then bears the burden of persuasion in proving that any such substantial burden is both "in furtherance of a compelling governmental interest" and the "least restrictive means of

furthering that compelling governmental interest." *Id.* (citing 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)).

Defendant Moors argues that the parties need not reach this burden-shifting phase of the analysis because RLUIPA is inapplicable for redressing claims involving retaliatory conduct of a single prison official. Rather, defendant argues, RLUIPA's strict scrutiny analysis is aimed at addressing only restrictive laws, policies or regulations.

In support of this position, defendant has requested that the court take judicial notice of the "Final Statement of Reasons" issued by the California Department of Corrections and Rehabilitation ("CDCR") on June 22, 2006, concerning the amendment of provisions in the California Code of Regulations, Title 15, related to inmate grooming standards and religious programs. *See* Defendant's Request for Judicial Notice and Exhibit A thereto. Defendant asserts that this document underscores the applicability of RLUIPA only to laws, regulations, or policies. Defendant quotes the document, stating, "[t]he Department has been ordered to comply with . . . RLUIPA which provides that the government may not impose a substantial burden on an inmate's exercise of religion unless the *regulation* in question furthers a compelling state interest in the least restrictive manner." *Id.* (emphasis in Defendant's Brief).

The court takes judicial notice of the CDCR document pursuant to Fed. R. Evid. 201(d), but finds that it does little to inform the defendant's position regarding RLUIPA's scope. In further support of his position, defendant argues that no published decision from the Ninth Circuit or the district courts of California has applied RLUIPA outside the context of challenges to CDCR regulations and/or policies. Defendant even asserts that the Ninth Circuit has "restricted" the application of RLUIPA to such challenges. Defendant's Brief, at 7:27-8:11.

Although the cases cited by defendant concern CDCR regulations or policies, none of them expressly limit RLUIPA claims to challenges of prison policy or regulations. *See Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) (affirming the district court's denial of defendant's motion to dismiss and upholding RLUIPA as constitutional); *Jesus Christ Prison*

*Ministry v. California Department of Corrections*, 456 F. Supp. 2d 1188 (E.D. Cal. 2006) (Drozd, J.) (denying defendants' motions to dismiss and for summary judgment with respect to prisoners' claims that mail distribution policy burdened the exercise of their religion); *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) (reversing denial of preliminary injunction in prisoner's suit challenging the prison's hair grooming policy as substantially burdening his religious practice).  Moreover, RLUIPA itself does not expressly limit its application to challenges of institutional policies or regulations.

RLUIPA provides that individuals "may assert a violation of this Act as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. . . ." 42 U.S.C. § 2000cc-2(a).  The Act defines "government" as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." 42 U.S.C. § 2000cc-5(4)(a).

This broad definition of "government" has been read by courts to allow prisoner suits against individual officials, both in their individual and official capacities.  *See*, *e.g*., *Nanak Sikh Soc'y v. County of Sutter*, 326 F. Supp. 2d 1128 (E.D. Cal. 2003) (Karlton, J.) (allowing plaintiff's claims to proceed against individual members of the Board of Supervisors in their official capacities), *aff'd*, 456 F.3d 978 (9th Cir. 2006).

As discussed in an unpublished opinion by a court in this district, federal district courts are split on the question of whether RLUIPA allows damages against state officials sued in their individual capacities.  *Bess v. Alameida*, No. CIV S-03-2498 GEB DAD P, 2007 U.S. Dist. LEXIS 63871, at *59-60 (E.D. Cal. Aug. 29, 2007) (Drozd, J.) (comparing *Shidler v. Moore*, 409 F. Supp. 2d 1060, 1071 (N.D. Ind. 2006) (recognizing RLUIPA claim for damages); *Charles v. Verhagen*, 220 F. Supp. 2d 937, 953 (W.D. Wis. 2002) (same); and *Guru Nanak Sikh Society of Yuba City*, 326 F. Supp. 2d at 1136 (allowing RLUIPA claims against individual officials in their official capacities); with *Boles v. Neet*, 402 F. Supp. 2d 1237, 1241 (D. Colo. 2005) (damages

7

are not available under RLUIPA)). Indeed, it appears that no federal appellate court has yet ruled on this issue. *See Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006) (discussing the split among district courts yet declining to rule on the issue).

The court in *Bess* reasoned that "if Congress had not added subsection (iii) [of § 2000cc-5(4)(a)], RLUIPA would only contemplate claims against officials in their official capacity. However, by including language that tracks that found in 42 U.S.C. § 1983, Congress appears to have intended RLUIPA to authorize claims against all persons amenable to suit under § 1983." *Bess*, 2007 U.S. Dist. LEXIS 63871, at *59-60 (citing *Daker v. Ferrero*, No. 1:03-CV-02481-RWS, 2006 U.S. Dist. LEXIS 94593, 2006 WL 346440 at *9-10 (N.D. Ga. Feb. 13, 2006); *Agrawal v. Briley*, No 02-C-6807, 2006 U.S. Dist. LEXIS 88697, 2006 WL 3523750 at *9-13 (N.D. Ill. Dec. 6, 2006); *Jama v. U.S. Immigration and Naturalization Serv.*, 343 F. Supp. 2d 338, 374 (D. N.J. 2004)).

The court noted that although RLUIPA "does not expressly state that monetary damages are available, it also does not preclude them," and concluded that plaintiff could proceed on his RLUIPA claims for monetary damages against defendants in their individual capacities. *Bess*, 2007 U.S. Dist. LEXIS 63871, at *59-60.

Although the issue of individual damages liability is not raised on the present motion, the decisions interpreting RLUIPA to allow them informs the issue of RLUIPA's scope. That is, if RLUIPA allows damages suits against individual "persons acting under color of State law," it follows that suits for individual conduct that violates the Act should also be allowed. *See* 42 U.S.C. § 2000cc-5(4)(a)(iii); 42 U.S.C. § 1983. Court decisions reflect this interpretation.

For example, in *Meyer v. Teslik*, 411 F. Supp. 2d 983, 989 (W.D. Wis. 2006), the court determined on summary judgment that a prison chaplain's failure to authorize a Native American prisoner to attend religious services posed a substantial burden to plaintiff's free exercise under RLUIPA. In *Meyer*, the prisoner's claims concerned only the prison chaplain's individual conduct resulting in a denial of access to religious services, and did not challenge the prison's

8

policy or practice of allowing attendance of religious events only if they were added to an authorized list.

Similarly, in *Williams v. Bitner*, 359 F. Supp. 2d 370 (M.D. Pa. 2005), the court denied defendants' motion for summary judgment on plaintiff's RLUIPA claims, which arose from a single incident involving plaintiff's refusal to handle pork while on kitchen duty. Plaintiff, a Muslim, had asked to be excused from any part of kitchen duty requiring him to handle pork, which he believed was prohibited by his religion. *Id.*, at 373-74. As a result of his refusal, plaintiff was cited for misconduct and subjected to disciplinary proceedings, which ultimately resulted in a sanction restricting him to his cell for twenty-seven days. *Id.* The court denied summary judgment, reasoning that defendants' actions – issuance of a misconduct and the sanction of cell restriction – could be construed by a reasonable trier of fact to constitute a "substantial burden" under the Act. *Id.*, at 375-76. The plaintiff's claim in *Williams*, like the claims by plaintiff in this case, did not challenge a particular prison policy or regulation. Rather, he challenged the conduct of particular individuals, which he alleged resulted in a substantial burden on the exercise of his religion.

In another case, a court that screened plaintiff's complaint under the Rule 12(b)(6) standard allowed plaintiff to proceed on his RLUIPA claims, which simply alleged that an individual prison official prevented plaintiff from meeting with a religious leader of his own faith. *Rowe v. Davis*, 373 F. Supp. 2d 822, 827 (N.D. Ind. 2005) (finding plaintiff had stated a claim under RLUIPA).

These decisions are contrary to defendant's premise that RLUIPA does not allow claims seeking redress for the conduct of a single prison chaplain. Although portions of the Act seem to contemplate lawsuits challenging laws, regulations, or "practice[s]," nothing in the Act precludes lawsuits for individual conduct, and as discussed above, courts have allowed such claims to proceed beyond summary judgment. *See* 42 U.S.C. § 2000cc-2(b) ("the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the

9

burden of persuasion on *whether the law (including a regulation) or government practice that is challenged by the claim* substantially burdens the plaintiff's exercise of religion") (emphasis added);  *see also* 42 U.S.C. § 2000cc-3(e) ("a government may avoid the preemptive force of any provision of this Act by changing *the policy or practice* that results in a substantial burden on religious exercise, by retaining the *policy or practice* and exempting the substantially burdened religious exercise, by providing exemptions from the *policy or practice* for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden.") (emphasis added).  Moreover, the Act does not define the term "practices," which can be reasonably construed to mean individual conduct.

Finally, the court notes that Congress has mandated a broad construction of RLUIPA. 42 U.S.C. § 2000cc-3(g) ("This Act shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution.").  This mandate to construe RLUIPA broadly should extend to the court's consideration of plaintiff's allegations, which do state a claim against defendant Moors.  Accordingly, at this early phase of this litigation, in the context of a Rule 12(b)(6) motion, the court recommends against dismissing plaintiff's RLUIPA claim against defendant Moors.  Whether or not plaintiff will ultimately be able to carry his burden of persuasion is another matter, and one not appropriately decided here.

**III. CONCLUSION**

In accordance with the foregoing, IT IS RECOMMENDED that defendant Moors' Rule 12(b)(6) motion to dismiss be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

////

1 specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158
2 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: September 27, 2007.

                                EDMUND F. BRENNAN
                                UNITED STATES MAGISTRATE JUDGE