IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MATTHEW LEE JASPAR,

      Plaintiff,                     No. CIV S-06-1797 MCE EFB P

    vs.

MOORS, et al.,

      Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") of 2000. This action proceeds on plaintiff's August 14, 2006 complaint against defendant for violation of the First Amendment and RLUIPA. On April 10, 2009, defendant moved for summary judgment. Plaintiff has opposed the motion and defendant has filed a reply. As explained below, plaintiff has failed to present evidence sufficient to show a genuine issue of material fact and defendant's motion must be granted.

**I.    Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

1

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On December 12, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**II. Facts**[1]

The following facts are undisputed unless otherwise noted. At all times relevant to this dispute, plaintiff, who is Jewish, was a state prisoner in the custody of the California Department of Corrections and Rehabilitation, and incarcerated at the California Medical Facility (CMF), where defendant was employed as a Protestant Chaplain. Def.'s Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("SUF") 1-3.

////

---

[1] Although plaintiff did not submit evidence with his opposition, plaintiff's verified complaint may be used as an opposing affidavit under Rule 56(e), to the extent it sets forth matters based on his personal knowledge. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

3

On November 9, 2003, plaintiff attended a religious musical event at CMF's Protestant chapel.[2] SUF 5. During the service, defendant believed that plaintiff and the inmate seated next to him were engaging in inappropriate sexual conduct, thereby disrespecting the chapel. SUF 7. Defendant told them that their conduct was inappropriate, and ordered them to leave the chapel. SUF 9. However, plaintiff believed he was singled out because of his Jewish faith and because of defendant's mistaken belief that plaintiff was engaged in homosexual conduct. Compl., ¶¶ 3-4. Plaintiff therefore filed an inmate grievance against defendant, but later withdrew the grievance. *Id.*, ¶ 5. Plaintiff and defendant never spoke about this grievance. SUF 15, 16.

On December 9, 2005, at the request of the clerks working in the Protestant chapel, plaintiff started playing the piano at the front of the chapel. SUF 23. Plaintiff did not have defendant's permission to play the piano, nor did defendant's clerks have the authority to give plaintiff permission to play the piano. SUF 24. Defendant heard the piano playing, came out of his office, and told plaintiff to leave the chapel. SUF 25. According to plaintiff, defendant said, "You continue to disrespect this chapel and you are not welcome here! I don't want that stinking Jew in here, and if I see any of the rest of you with him, I'll ban you as well!" Compl., ¶ 6. As plaintiff was leaving, defendant purportedly shouted, "Yeah! Now write that up!," which led plaintiff to believe that defendant was referring to the November 9, 2003 grievance. *Id.*

On December 20, 2005, between 8:40 a.m. and 8:45 a.m., plaintiff went to see if the Rabbi was in her office, although he did not expect her to arrive until 9:00 a.m. SUF 26, 29. The Rabbi's office is located at the Jewish chapel entrance, in the same hallway and approximately thirty feet away from defendant's office. SUF 19, 26. Inmates are not authorized to loiter in this hallway at any time. SUF 31. Further, inmates are required to obtain an inmate

---

[2] Facts regarding the November 9, 2003 incident are included only to provide context for plaintiff's December 2005 retaliation claim, as any independent claim arising out of defendant's conduct on November 9, 2003, was previously dismissed by the court as unexhausted. *See* Dckt. Nos. 21, 24.

4

pass from a staff member before moving through the facility. SUF 20. Plaintiff waited for the Rabbi in the hallway outside of her office. SUF 30. Plaintiff did not have an appointment to see the Rabbi that day, nor did he have an inmate pass to see her. SUF 27, 28. Defendant saw plaintiff standing in the hallway, told plaintiff he was not authorized to be in the area, and that he had to leave. SUF 32. Plaintiff claims that defendant told him to, "Get the hell out of here, you reprobate! And you can go tell *that* to your social worker!" Compl., ¶ 8; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Opp'n") at 2. Plaintiff concedes that he was not authorized to be in the area at that time, and left the area as instructed. SUF 33.

On December 27, 2005, plaintiff received an inmate pass to visit the Rabbi. SUF 34. She was not in her office when plaintiff arrived, so he waited in the hallway outside of her office. SUF 35, 36. Defendant came out of his office, told plaintiff that he was in an unauthorized area, and asked him to leave. SUF 37.

On both the December 20 and December 27, 2005 encounters between plaintiff and defendant, the Rabbi was not in her office when plaintiff arrived. SUF 38. Although plaintiff left the area immediately after defendant instructed him to, he was later able to get an inmate pass, return to the Rabbi's office, and see the Rabbi the same day, when she was in her office. SUF 39.

Plaintiff alleges that defendant's actions in December 2005 were in retaliation for the grievance that plaintiff filed, and later withdrew, in November 2003. Plaintiff further alleges that defendant's December 2005 actions violated RLUIPA and the Free Exercise Clause of the First Amendment. Specifically, plaintiff claims that defendant has "denied plaintiff free access to his Rabbi, his place of worship, and has resulted in the exclusion of his central tenet of spiritual fellowship." Compl., ¶ 22.

////

////

////

5

**III. Analysis**

    **A.    Retaliation Claim**

To prove retaliation, plaintiff must show that a state actor took some adverse action against him because of his protected conduct, and that such action chilled the inmate's exercise of his First Amendment rights and did not reasonably advance a legitimate penological purpose. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). Inmates have a First Amendment right to file prisoner grievances to address issues related to their confinement, and they may not be punished for exercising that right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995).

Defendant has demonstrated that there is no genuine issue of material fact with respect to plaintiff's retaliation claim. To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Defendant submits evidence that his actions in December 2005 were not motived by plaintiff's filing of an administrative grievance against him in October 2003, as he was not even aware of the grievance until he read plaintiff's allegations in the instant complaint. SUF 17. Defendant also submits evidence that on each occasion, defendant asked plaintiff to leave because plaintiff was not authorized to be there. SUF 24, 25, 32, 37; *see also* Def.'s Mot. for Summ. J., Decl. of Def. in Supp. Thereof, ¶ 16-17.

While plaintiff states in his verified complaint that defendant made a comment suggesting he was aware of a grievance filed by plaintiff, there is no evidence that the grievance, filed and withdrawn in October 2003, was the motivating factor behind any of the December 2005 incidents. *See Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (to create a genuine issue of material fact on retaliatory motive, a plaintiff must establish more than defendant's knowledge of the protected conduct); *see also Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

The comments appear to have little if any connection to the grievance that was filed and promptly withdrawn two years earlier. While the alleged comments--if made--are undoubtedly offensive, they do not establish the existence of a genuine issue of material fact as to plaintiff's retaliation claim.

In his opposition brief, plaintiff asserts that he "never loitered in any unauthorized areas" and that he had a valid inmate pass at all relevant times. Opp'n at 2. However, plaintiff previously admitted that he did not have a valid inmate pass on December 20, 2005. SUF 28, 33. Plaintiff also admitted that on December 20 and 27, 2005, he waited in the hallway because the Rabbi was not yet in her office and plaintiff does not challenge defendant's evidence that inmates are not authorized to loiter in this hallway at any time. *See* SUF 29, 30-31, 33, 35- 36. Further, it is undisputed that plaintiff did not have defendant's permission to play the piano in the Protestant chapel on December 9, 2005, and that defendant's clerks did not have the authority to give plaintiff permission to do so. *See* SUF 24. Plaintiff has failed to establish a triable issue of fact. Thus, defendant is entitled to summary judgment on this claim.

**B.     RLUIPA Claim**

Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). A "substantial burden" is one that imposes a significantly great restriction or onus upon such exercise. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

Here, the evidence establishes that plaintiff's religious exercise was not substantially burdened. On two occasions, defendant ordered plaintiff to leave the hallway area when the Rabbi was not in her office. SUF 29, 32, 35, 37. It is undisputed that on both occasions, after

being instructed to leave, plaintiff was able to obtain an inmate pass and see the Rabbi later in the day. SUF 39. Further, plaintiff concedes that defendant never prevented him from seeing the Rabbi when she was in her office. SUF 40. Simply put, there is no evidence that defendant's actions imposed a great restriction or onus upon plaintiff's religious exercise. In opposition, plaintiff argues that he was authorized to be in the chapel area and that defendant's actions did not further a compelling governmental interest. Opp'n at 3. Plaintiff does not, however, present any evidence to establish a triable issue concerning whether defendant substantially burdened plaintiff's exercise of his religion. Defendant is therefore entitled to judgment on this claim. *See Warsoldier*, 418 F.3d at 994 (9th Cir. 2005) (prisoner bears initial burden to demonstrate a prima facie claim that government practice substantially burdens plaintiff's exercise of religion); *see also* 42 U.S.C. § 2000cc-2(b).

### C. Free Exercise Claim

In order to establish a violation of the Free Exercise Clause of the First Amendment, plaintiff must establish that defendant burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). Since there is no evidence that defendant burdened the practice of plaintiff's religion, defendant is entitled to judgment on plaintiff's Free Exercise claim.

### IV. Conclusion

For the reasons discussed above, the court concludes that defendant is entitled to summary judgment on each of plaintiff's claims. Therefore, the court need not address defendant's argument for qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's April 10, 2009 motion for summary judgment be granted and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 10, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE